THE PEOPLE, *ex rel.* The Hanover Bank, *vs.* THE COMMIS-SIONERS OF TAXES AND ASSESSMENTS OF THE CITY AND COUNTY OF NEW YORK.

Stocks and bonds of the United States, owned by a resident of this state, may be taxed, with other personal estate.

The act of congress of February 25, 1862, exempting such stocks from taxation, is valid, so far as it relates to all stocks, bonds, and other securities issued by the United States after the passage of the act.

Such securities are not subject to taxation under the state laws. CLERKE, J. dissented.

Congress has no power, by retrospective legislation, to withdraw from state taxation stocks and other like securities, issued by the United States, already subject to such taxation; and the act of February 25, 1862, so far as it exempts from state taxation United States securities previously issued, is extra-constitutional and inoperative.

THE relator, the Hanover Bank, having a capital of one million dollars, were assessed at $908,119, the assessors having deducted from the capital the value of the real estate, and stocks in other corporations. The bank objected to this

assessment, and presented to the board of commissioners of taxes and assessments the statement and affidavit required by law, showing that it owned and held stocks, bonds and securities of the United States to the amount of $896,500; that all its other personal estate did not exceed $946,000, and that its debts were not less than $841,000; that the whole value of its personal estate, over and above its debts, exclusive of such United States stocks, bonds and securities, did not exceed $105,000. The board of commissioners refused to exempt the United States stocks, bonds and securities from taxation, and assessed the personal estate of the bank at $908,119. The relator sued out a writ of *certiorari*, for the purpose of having such decision reviewed and corrected on the merits, in pursuance of the statute. (*Laws of* 1859, *p.* 684, § 20.)

*Charles Tracy,* for the relator. I. These stocks, bonds and securities of the United States are exempt from taxation, under state authority. (1.) They are so exempt on grounds of constitutional law, independently of any statute specially conferring such exemption. (*Const. U. S., art* 1, § 8; *art.* 6, § 2. *McCullough* v. *State of Maryland,* 4 *Wheat.* 316, 409, 413, 417, 432, 436. *Osborn* v. *U. S. Bank,* 9 *id.* 738, 859, 864, 865. *International Life Assurance Co.* v. *Com'rs of Taxes,* 17 *How. Pr. R.* 206, 210. *Weston* v. *City Council of Charleston,* 2 *Peters,* 449. *Providence Bank* v. *Billings,* 4 *id.* 563, 564. *Smith's Com.* 317. *People* v. *N. Y. Tax Com'rs,* 32 *Barb.* 509, 512. *See also* 23 *N. Y. Rep.* 192, *S. C.*) (2.) Such exemption is now secured by the act of congress, passed February 25, 1862, entitled "An act to authorize the issue of United States notes, and for the redemption and funding thereof, and for funding the floating debt of the United States." The second section of that act concludes thus: "all stocks, bonds and other securities of the United States, held by individuals, corporations or associations, within the United States, shall be exempt from

taxation by or under state authority." (*Stat. at Large*, 37*th Congress, p.* 346.) (3.) The providing of such exemption was an important financial measure of the federal government. The statute was passed in order to borrow money; and this exemption increased the value of the securities to be issued, strengthened the public credit and. promoted the taking of .the loan. To confer such an exemption, as a means of more effectually exercising the power to borrow money and carry on the general financial affairs of the United States, was clearly constitutional.. (4 *Wheat.* 431, 432, 435, 436. · 9 *id.* 864, 865, 867. 2 *Peters,* 467, 468.) (4.) This bank, and other capitalists, have loaned to the government large amounts on the faith of this declared exemption, at rates which would not have been given if the securities· were to be subject to state taxes. In case the exemption were held void, and the securities were subject to the proposed tax, the federal government would be bound to indemnify the holders, and of course would do so; (*Jeff. Branch Bank* v. *Skelly,* 1 *Blackf.* 436, 446;) and the result would be that the tax commissioners, indirectly, but effectually, had laid a tax on the treasury of the United States. "The states have no power, by taxation or otherwise, to retard, impede, burden or in any .manner control the operations·of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." (4 *Wheat.* 436.) (5.) This exemption has been fully sustained by judicial decision in New Jersey.

II. The relator does not lose the benefit of the exemption by reason of its being a bank, or a corporation. (1.) Since the statute of 1857, the property of corporations in this state is assessed and taxed like the property of natural persons. Taxes on corporations, under that statute, are not in the nature of license duties or bounties exacted as the price of franchises given, but are a part of the general tax assessed upon property in proportion to its actual value. The nominal amount of capital of a corporation no longer governs the

assessment; and the fact that the holder is a body corporate affects neither the subjects nor rate of assessment. (*Laws of* 1857, *vol.* 2, *p.* 1, *ch.* 456, § 3. *Id. p.* 122, *ch.* 536, § 3. 1 *R. S.* 392, § 20. *Oswego Starch Factory* v. *Dolloway,* 21 *N. Y. Rep.* 449. *People* v. *Tax Com'rs,* 23 *id.* 192. *Utica Cot. Manuf. Co.* v. *Sup. of Oneida,* 1 *Barb. Ch. Rep.* 432, 448.) (2.) The view expressed in this court in 32 *Barb.* 509, 512, 516, 517, that the tax assessed against a corporation is assessed upon the aggregate amount of its capital, and not upon the property constituting the capital, is overruled by the decision in 23 *N. Y. Rep.* 192. The statute of 1857 having placed corporations on the footing of individuals in this respect, a bank must be assessed upon its property as as such, in conformity to the general statutes governing the whole subject of taxation. (1 *R. S.* 387, § 1; 388, § 3; 391, § 9. *Sess. Laws,* 1851, *ch.* 176, § 6. 1 *R. S.* 5*th ed.* 912, § 25.) (3.) The statutes of this state contemplate the existence of exemptions from taxation, and secure them to corporations as well as individuals. (1 *R. S.* 388, § 4. *Laws of* 1857, *vol.* 2, *p.* 1, § 3. 1 *R. S.* 5*th ed.* 946, § 11. *See* 23 *N. Y. Rep.* 213 *et seq.*) (4.) The act of congress in question enumerates corporations and associations among the holders who have the benefit of the exemption. (*Act of Feb.* 25, 1862, § 3.)

III. The assessment being illegal, should be corrected by reducing the valuation of the taxable personal property of the bank to $105,000.

*H. H. Anderson* and *Greene C. Bronson,* for the respondents.

INGRAHAM, P. J. So far as the questions involved in this case were discussed and decided by the court of appeals, in the case of *The People, ex rel. The Bank of the Commonwealth,* v. *The Com'rs &c.,* (23 *N. Y. Rep.* 192,) we do not feel at liberty to express any opinions at variance therewith.

The People v. The Commissioners of Taxes.

That case must be understood as deciding that stock of the United States, held by a corporation or by individuals, may be taxed under the laws of this state, where such taxation is general as applying to all personal property, and no unfriendly discrimination to the United States stock is applied by the state law; or in other words, that where the taxation was general on the personal property of an individual or corporation, property which, if nominally taxed as stock of the United States, could not be taxed, may be included in the general aggregate of property liable to taxation, and the tax thus be imposed.

It is conceded that property exempt from taxation by law must be deducted from the aggregate valuation of personal property thus subject to assessment, and this principle was afterwards settled by the unanimous decision of the court of appeals, in *The People, ex rel. Hoyt*, v. *The Com'rs of Taxes*, (23 *N. Y. Rep.* 224,) in which it was held that the personal property of an individual residing in this state, actually situated in another state or county, is not to be included in the assessment against him. And in the case first cited, Denio, J. says: " It follows, therefore, from the very language of the statutes, that if the Bank of the Commonwealth has invested a part of its capital paid in, in a stock which is exempt from taxation, such portion is to be excepted from the assessment."

While, therefore, this decision is to be considered as controlling, upon the question whether in assessing the aggregate value of the personal estate of an individual or corporation, stock of the United States should be included, still the question which has now been submitted to us formed no part of the matters upon which the court passed when the subject was before them. A distinction was then taken between the exemption from taxation of these stocks under the provisions of the constitution, which gave congress power to borrow money on the credit of the United States, and such exemption if specially enacted by an act of congress. · The learned

judge says, "It is the constitution alone which is to be looked to, for congress has never passed any law on the subject," and the court expressed no opinion on the question whether congress could enact a law by which the lenders of money to the government should enjoy the advantages of exemption from state taxation in respect to such loans; but it is said, "In the absence of any such statute, and resting upon the general grant of power contained in the constitution, we are of opinion that the claim to be exempt from taxation cannot be allowed to prevail."

Whatever, therefore, may be the individual opinions of the members of this court on these questions decided by the court of appeals, we do not feel at liberty to re-examine them in this case; and the only difference which exists between that case and the present, is as to the effect of the provision of the act of congress of the 25th February, 1862, which says: "All stocks, bonds and other securities of the United States, held by individuals, corporations or associations within the United States, shall be exempt from taxation by or under state authority."

Two questions arise in regard to this enactment:

I. Whether, if constitutional, such a provision would exempt them under our laws; and

II. Whether congress can pass such a law limiting and restricting the powers of a state in regard to taxation.

Upon the first point I think there can be little difficulty. The act of 1857 expressly excepts from the personal property to be valued and assessed, all such part of it as shall have been exempted by law, and Denio, J. says: "It would be the duty of the assessors to inquire whether any of this property into which the capital had been converted was exempted by law from taxation. The bank is, as a general rule, assessed and taxed for all its property of every kind, but there is an exception as to such part of it as the constitution and laws of the union and of the state have, upon special reasons of policy, declared shall be exempted." There can be

The People *v.* The Commissioners of Taxes.

no difficulty under this decision, as well as under the statute, in coming to the conclusion that such deduction must be made, if the act of congress directing the exemption of the United States stocks and bonds from taxation is valid.

The cases which at various times have been decided in the United States court, (*McCullough* v. *State of Maryland,* 4 *Wheat.* 316; *Weston* v. *City of Charleston,* 2 *Peters,* 449; *Osborn* v. *The United States Bank,* 9 *Wheat.* 738,) and others which might be cited, all hold that special taxation against the stock, bonds or incorporations under the United States laws, was forbidden by the power given to the general government under the constitutional powers conferred upon congress in connection therewith. To this extent I consider the decision of the court of appeals, before referred to, as going. Denio, J. takes the distinction between assessing the United States stocks and bonds specifically and including the value thereof in the valuation of a man's personal estate. He says, "An unfriendly act of legislation which should exclude the federal government from reverting to the money markets of a particular state for loans, though it might not seriously affect the exercise of the borrowing power elsewhere, would be so obviously hostile to the operations of the government that I am confident it could not be sustained;" and again, (*p.* 207,) "If the federal stock can be taxed separately and specifically at any amount which a state legislature, or a municipality to which its power has been delegated, shall see fit, the government, in seeking to obtain money on loan, may be effectually driven out of the markets of such state."

If it be conceded that the right to borrow money by the congress of the United States, granted by the constitution, prevents the states from laying a specific tax on such bonds and stocks to an extent that would interfere with the government in borrowing money in such state, it seems to follow that the government must have the right to make such loans on such terms and limitations as they shall deem necessary to make such loans available; and that congress, in author-

izing such loans, is the body that must decide as to the conditions on which the loans may be taken. If the power to borrow involves the power to prevent the states from interfering with such loans by specific taxation, can there be any doubt that congress may, for the sake of securing such loans, say to what extent, if any, the states may tax the same, and add, to the terms on which the stock shall be issued, immunity from taxation throughout the country? If the states cannot impose a specific tax because it would impair the value, and thereby interfere with the power of borrowing, may not congress say that neither a specific or general tax shall be imposed by the states, in order to secure the success of the loan?

The power to borrow money and to issue stock is undoubtedly a sovereign power, and embraces within it all necessary powers to carry it effectively into exercise. It cannot be restrained as to the place throughout the states in which it is to be exercised, nor the terms on which loans are to be made, nor the mode of transfers it may adopt, nor the place where they are to be made, nor the exemptions which such stocks shall have from public burdens. If congress had said no specific tax shall be laid on such stocks and bonds in any of the states, the power to do so would be conceded, under the decisions of the United States courts, as well as the courts of this state. If they can prevent specific taxation, I see no reason why the same power will not enable them to forbid any taxation, if in their judgment such restriction is necessary to carry out the original powers to borrow money. Whether they exercise that power wisely or not, is not for the courts to inquire. The discretion is with them, the power is with them, and when exercised by them that exercise of power is within the constitutional authority " to make all laws which might be necessary or proper to carry into execution such power."

In *The United States* v. *Fisher et al.,* (2 *Cranch*, 258,) the right of congress to give priority to debts due the United

The People *v.* The Commissioners of Taxes.

States is clamed under the general powers to make all necessary laws. In that case it was said, "Congress must possess the choice of means, and must be empowered to use any means which are in fact conducive to the exercise of a power granted by the constitution." The same was said by Chief Justice Marshall, in *McCullough* v. *State of Maryland:* "If the end be legitimate, and within the scope of the constitution, all the means which are appropriate, which are adapted to that end, and which are not prohibited, may constitutionally be employed to carry it into effect," and "The degree of its necessity is a question of legislative discretion, not of judicial cognizance;" and, in *Brown* v. *State of Maryland,* (12 *Wheat.* 419,) it is said, "Questions of power do not depend upon the degree to which it may be exercised. If it may be exercised at all, it must be exercised at the will of those in whose hands it is placed."

It must be apparent, then, if congress has any power to prohibit taxation of their stocks or bonds, specifically, or to give any privileges to those who buy the same, the extent to which taxation may be prohibited at all is an act of discretion, to be exercised by congress, and which cannot be the subject of judicial limitation. Legislative discretion should not be restrained by judicial decisions. It is the want of power, and not of discretion in the legislature, which can be reviewed by the courts.

If it were necessary to refer to the condition of public matters, as rendering it necessary that the general government should possess every power, to enable them advantageously to borrow money, very urgent reasons could be advanced, to show how necessary is the right to exercise such powers at the present time, to enable them to provide the means for the preservation of the government, but it is not necessary, under the views above expressed on these questions.

It is argued on behalf of the respondents that, even if the act of February, 1862, is valid, it cannot be made applicable to stocks issued previous to its passage. The ground upon

which the exercise of that power by congress is sustained is, that by such provisions the power of congress to borrow money is aided, and that to deprive that body of the power to prescribe the terms on which the loan could be made, and the privileges be conferred, therefore, would be to impair the power thus conferred by the constitution. I am at a loss to see how that necessity exists as to stocks which had been issued and paid for long before its passage. We are controlled by the decision of the court of appeals that, as to all stock issued before the passage of that act, it was subject to taxation with the other property of individuals and corporations. It is, then, presented as a simple statute, in regard to this stock, to exempt it from taxation by the states, passed long after the government had any interest in its value. Without such interest I should doubt the power to exempt such stocks, any more than any other property, from taxation. As a declaratory act of the views of congress, as to their right to exempt stock from taxation, it would be of value, but it would confer no power which congress did not otherwise possess. If the right to exempt from taxation rests solely on the necessity of the power, in order to enable the United States rightly and advantageously to carry out the provision of the constitution as to borrowing money, such right could not with propriety be claimed in regard to stocks which had long before been issued, and the consideration for which had long before been paid over to the government. Such property could with no more propriety be exempted from taxation by an act of congress, if such legislation was necessary, than any other property on which taxes might be imposed.

An objection was taken to this proceeding that it was brought too soon, because no taxes had been imposed. The proceedings are against the commissioners as assessors. Their duty is completed when the assessment is made out. The taxes are imposed by the board of supervisors. The proceedings are to correct the assessment, not the imposition of taxes.

It was said that there was no certainty that any tax would

be imposed. Independent of the law which requires such taxes to be imposed equally upon all the property returned as liable to taxation, it can hardly be supposed even within the bounds of possibility that an individual or corporation, returned as having large amounts of personal property subject to taxation, would not, at the present day, find a sufficient amount of taxes imposed thereon.

My conclusions are:

I. That, under the decision of the court of appeals, in *The People ex rel. The Bank of the Commonwealth* v. *The Commissioners of Taxes,* (23 *N. Y. Rep.* 192,) stocks and bonds of the United States, owned by a resident of the state, may be taxed with other personal estate.

II. That the act of congress, of February, 1862, exempting such stocks from taxation, is valid, so far as it relates to all stocks, bonds, and other securities issued by the United States after the passage of the act.

III. That such securities are not subject to taxation under the state laws.

The respondents should be ordered to correct the assessment rolls, by striking from the amount the stock, bonds, and securities, issued by the United States and held by the relator, of a date subsequent to the passage of the act of congress.

BARNARD, J. concurred.

CLERKE, J. (dissenting.) The three cases in the supreme court of the United States, which have any application to the question of the exemption of stocks, bonds, and other securities of the United States, from state taxation, have been reviewed in the opinion delivered in the court of appeals, in *The People on the relation of the Bank of the Commonwealth* v. *The Commissioners of Taxes and Assessments for the city and county of New York,* (23 *N. Y. Rep.* 192.) According to that opinion, *McCullough* v. *Maryland,* (4 *Wheat.* 316,) and *Osborn* v. *Bank of United States,* (9 *id.* 738,) essentially differ from the case before us. With

regard to *Weston* v. *The City Council of Charleston,* (2 *Peters,* 449,) it was held that the decision in that case applied only to state taxation, not laid in common with the bulk of the property of the citizens, but specially upon securities of the United States; making an unfriendly discrimination against them as borrowers, and interposing obstacles by invidious distinctions to embarrass them in the exercise of a power expressly delegated to them by the people and the states.

It was considered, therefore, by the court of appeals in the case to which I have referred, that the question was an open one, whether taxation by the state, of property invested by its citizens in a loan to the United States, was in contravention of the federal constitution. After mature deliberation, they decided that stock in the public debt of the United States, whether owned by individuals or by corporations, is constitutionally taxable by the legislature of the state. The opinion states, "if it had been intended (by the framers of the constitution) to give them (the United States) in the states of the union an advantage over all other borrowers, it is certainly remarkable that more explicit language was not used." And then it proceeds to say, "We give no opinion on the question whether congress could enact a law by which the lenders of money to the government should enjoy the advantage of exemption from state taxation, in respect to such loans." I should have supposed that having arrived at the conclusion that the constitution of the United States has not given the federal government an advantage over other borrowers in the states, it would follow that congress could not confer that advantage. If the constitution has not conferred this advantage expressly or impliedly, it is difficult to see that congress can.

The latter can exercise no powers which are not expressly or impliedly given to it; if the constitution says nothing either expressly or impliedly on the subject, no affirmative legislation by congress can make it constitutional; and if the constitution does exempt the property in question from

The People *v.* The Commissioners of Taxes.

state taxation, either expressly or by necessary implication, no federal legislation would seem to be necessary, unless the constitution provided for legislative regulation on the subject, or left it to the discretion of congress to exercise the power. The opinion, however, delivered in the court of appeals, seems to consider that, although the federal constitution has not forbidden taxation, by the state, of property invested in a loan to the federal government, the question remains an open one, whether congress, by direct legislation, can do so.

In considering this question, it is proper to inquire:

1st. Whether congress possesses the power to exempt any property belonging to citizens of a state from state taxation, either by virtue of the relations existing between the federal government and the several state governments, and by virtue of the inherent power which necessarily resides in the former, arising from the purpose and nature of its constitution. Or,

2d. Does it derive any such power from that clause of the constitution which authorizes congress to make all laws necessary and proper for carrying into execution the powers expressly given? In other words, has congress the right to forbid taxation by a state, because it is necessary, or congress deems it necessary, to enable it to carry into execution the express power given to the federal government of borrowing money?

I. Does congress possess this power from the indispensable nature of the relations existing between the federal and the state governments, and as a consequence of the inherent power which necessarily resides in the former, arising from the purpose and nature of its organization? In other words, to apply the proposition more specifically to the case before us, does it necessarily follow, because the power to borrow money is an express, sovereign power, that every power supposed to remain in the states, the exercise of which could interfere with this sovereign power of the United States, may be suspended or excluded?

In favor of the affirmative of this proposition, it is broadly asserted that otherwise the federal power to borrow money

would not be a sovereign power; and as a consequence of this, it is maintained that the issuing of evidences of debt, with or without a declared exemption from state taxation, or with any other privileges attached to them, being the exercise of the sovereign loan power, they cannot be taxed by the states. The tax in question, it is said, is a tax upon the contract between the government and the individual; that it operated upon the contract the instant it is framed, and must imply a right to affect that contract; that in the exercise of the power to borrow money the government applies directly to its citizens for the loan, without the intervention of state authority; it seeks no aid from the state, and is exempted from control; and that it is essential to its exercise that the power should be entirely untrammeled by any burden thrown upon it by state authority. In a word, the sum and substance of the whole argument is, that the power to borrow money being a sovereign power, it carries with it the power to define the relations of citizens to the loan, and to exempt it from all state interference. This is the proposition, in all its force, divested of any unnecessary accumulation of words.

Has it not occurred to those who employ this reasoning, that it can be urged quite as plausibly in favor of a state against any taxation of the United States, as in favor of the United States against any taxation of a state. In answer to this, it will doubtless be said that the constitution of the United States is the supreme law of the land. For the constitution and "all laws made in pursuance thereof" are the supreme law of the land. Now, the very question we have to determine in this case is, whether the law exempting stocks, bonds, and other securities issued by the United States, from state taxation, is in pursuance of the constitution.

The power to borrow money is as sovereign, unlimited and independent in each state, as it is in the United States; and would it not appear very strange to hear an advocate in a court of justice denying the right of the latter to tax any stocks, bonds, and other securities of this state, on the ground

of the sovereign power of the state to borrow money, and on the ground that the exercise of any power on the part of the United States, which could defeat or impede this power of the state, is of necessity excluded?

Let us apply this claim on behalf of the federal government to any other of its sovereign powers—the power, for instance, to establish post offices and roads. This, although, as some commentators have contended, it may be only a concurrent power with the several states, is still a sovereign power, as supreme as the power to borrow money. It includes the right to carry the mails, and to make contracts with common carriers, or others, for that purpose. Is it a necessary incident of this sovereign power that, to enable the federal government to make advantageous contracts for carrying the mails, the vehicles, horses and other property of the contractors employed for that purpose, should be exempt from taxation by the state in which the contractors lived or held this property? This exemption may be deemed quite as necessary by congress to enable the federal government to carry the mails effectually and economically, as to enable them to borrow money. The advantage which such an exemption would give them over other common carriers would be as necessary, in the sense claimed for this word in the constitution, as the advantage which a like exemption would give them over other borrowers, in their contracts with lenders of money. In what consists the difference? The difference can only be in the fact that one is a contract to carry the mails, and the other is a contract to borrow money. The analogy in principle is complete; unless we revive the exploded notions of popular ignorance, which impute to money, and contracts relating to money, an exemption from the ordinary laws of trade, and of economical science. The power to carry the mails and the power to borrow money are both alike sovereign powers. The difference is only in the degree of their importance, which at one time, under certain circumstances, may be in favor of the one; at another time, and

under other circumstances, may greatly preponderate in favor of the other. Taxation by the state may have the effect of defeating and impeding the power of the United States in the one case as effectively as in the other. I admit, if the state selected this property employed in carrying the mails, and imposed burthens on it from which the mass of similar property in the state was exempt, that such a discrimination would be unconstitutional, as indicative of a hostile design, and calculated, by special legislation, to obstruct the federal government in the exercise of a constitutional power; and such taxation would be analogous to the taxation declared to be unconstitutional in *Weston* v. *The City of Charleston,* (2 *Peters,* 449.) Or, if the government owned mail wagons and other vehicles, and horses, for the purpose of carrying the mails, instead of making contracts with the citizens of any state to do so, I also admit that the taxation of such property would be unconstitutional; as it would be a taxation of the means or machinery possessed by the federal government to carry into execution a power conferred on it; and such taxation would be analogous to that declared to be unconstitutional in *McCullough* v. *The State of Maryland,* (4 *Wheat.* 316;) and *Osborn* v. *The United States Bank,* (9 *id.* 738.) The wagons and horses in this supposed case could no more be taxed by state authority than the treasury department, the mint, or the post office itself. In the first of these cases the action was against the cashier of the branch bank of the United States, to recover a penalty for issuing unstamped notes. But when it was determined that the bank was a legally ordained and settled instrument of the United States government in its fiscal operations—that it was, in a word, the Bank of the United States—it was declared to be as exempt from taxation by the state as the mint itself. The second of these cases was an action to test the validity of the statute of the state of Ohio, imposing an annual tax of $50,000 on the Ohio Branch Bank of the United States. This was held to be a tax on the operations of an instrument

The People *v.* The Commissioners of Taxes.

(the bank) belonging to the federal government, to carry its powers into execution. But it was not pretended that the money invested by the citizens of either Maryland or Ohio, in the stock of these branch banks, was exempted from state taxation. In these instances a constitutional establishment, by which the fiscal operations of the federal government were conducted, was directly interfered with by the penalty imposed in the one, and the tax imposed in the other case. But although, in the instance before us, by exemption from state taxation, the action of the federal government in negotiating a loan may be greatly facilitated, and the loan obtained on easier terms, as in the supposed example of a contract with a common carrier to convey the mails, the absence of that exemption, and the liability to state taxation on the part of those who make the loan, in common with the property of other citizens of the state, is no more an interference with any establishment or machinery of the federal government than taxing stock held by any citizen of a state in any branch bank. The investment by individuals of their money in those institutions, and the ownership of stock in common with the government, no doubt greatly facilitated its fiscal operations. In either case the exemption would be an advantage to the federal government; but the taxation itself is no such interference with those operations as can be considered an invasion of its sovereign power. If citizens of a state choose to withdraw their property from other investments to invest it in stocks, bonds or other securities of the United States, why should they be relieved from their liability to contribute to the support of the governments of their respective states? How can it be maintained that taxing them—taxing the whole property of those individuals in common with the whole property of other citizens—encroaches on the sovereign power of the United States? It deprives the latter, indeed, of an advantage over other borrowers; but it is no deprivation of a right.

And this reminds me of another illustration. The power

to lay and collect taxes, &c. is certainly as sovereign a power as the power to borrow money. Now if any action on the part of a state, calculated to defeat or impede the power to borrow money, is not to be allowed, on the ground that it is interfering with a sovereign power of the United States, so, by a parity of reasoning, clear and irrefutable, an action on the part of a state, calculated to defeat or impede the sovereign power of taxation by the United States, is equally inadmissible.

Was this ever contemplated by the framers of the constitution of the United States? Most undoubtedly not. There was no subject within the range of governmental powers, which presented greater difficulty to the authors of that instrument, than the subject of concurrent taxation by the federal government and by the several states. But, was it ever intended by them that this sovereign right of the states to tax property within their borders should be eclipsed by the same right of the United States, merely because the exercise of the right by the former may defeat or impede that of the latter? To each state is reserved the right of taxation, except "to lay any imposts or duties on imports or exports." This is the only limitation on that right; in every other respect the right is sovereign and unlimited, and absolutely concurrent with that of the United States. This subject of taxation by the general and state governments, as will be seen from Nos. 30, 31, 32, 33, 34, 35 and 36 of the *Federalist*, all written by Mr. Hamilton, was discussed most fully and thoroughly in the convention. It was suggested by some, in order to avoid possible conflict, that there should be a partition of the objects of revenue; as for instance, that the states should only have power to tax houses or lands, or that the United States should have power only to lay imposts and duties on imports and exports, leaving to the states all internal taxation. It was also suggested that, in regard to taxation, as well as in regard to other subjects, the states should be subordinate to the federal government; but, after

a long and able discussion in and out of the convention, it was resolved that a concurrent jurisdiction in the article of taxation was the only admissible proposition. "The convention," in the words of Mr. Hamilton, "thought the concurrent jurisdiction preferable to subordination; and it is evident, it has at least the merit of reconciling an indefinite constitutional power of taxation in the federal government with an adequate and independent power in the states to provide for their own necessities." So that the right of taxation in both, except in relation to imports and exports, is equally sovereign.

But the taxing powers are not more concurrent than the power to borrow money! Was it ever supposed, I repeat, that the power of taxation in the several states should yield to that of the United States, on the ground that the exercise of the former may defeat or impede that of the latter. Hear Mr. Hamilton again on the subject, in language which applies to the United States, on the subject of their sovereign power to borrow money, as well as to their sovereign power to tax. He says, "I am willing to allow in its full extent the justness of the reasoning, which requires that the individual states should possess an independent and *uncontrollable* authority to raise their own revenues for the supply of their own wants. And making this assertion, I affirm that (with the sole exception of duties on imports and exports) they would, under the plan of the convention, retain that authority in the most *absolute* and *unqualified* sense, and that an attempt, on the part of the national government, to abridge them in the exercise of it, would be a violent assumption of power, unwarranted by any article or clause of its constitution," (*No.* 32 *of the Federalist;*) and in the next paper (*No.* 33) he says, "Suppose again that, upon the pretense of an interference with its revenues, (an interference with the exercise of its sovereign power to tax,) it should undertake to abrogate a land tax imposed by the authority of a state, would it not be equally evident that this was an inva-

sion of that concurrent jurisdiction in respect to this species of tax which the constitution plainly supposes to exist in the state governments;" and again, " Though a law levying a tax for the use of the United States would be supreme in its nature, and could not legally be opposed or controlled; yet a law *abrogating* or *preventing* the collection of a tax laid by the authority of a state (unless upon imports and exports) would not be the supreme law of the land, but an usurpation of a power not granted by the constitution." He insists, throughout, that the individual states retain an independent and uncontrollable authority to raise revenue by every kind of taxation except duties on imports and exports; that there is no power, as under the Roman commonwealth in the *comitia centuriata,* and the *comitia tributa,* on either side, to annul the acts of the other; that the power of taxation, and therefore the power to borrow money, and every other concurrent sovereign power, must be exercised by each without let or hindrance from the other; and that any attempt, direct or indirect, under any pretense whatever, on the part of the United States, to abridge the power of a state to tax the property of its citizens, is the usurpation of a power not granted by the constitution.

But to recur to an objection already glanced at, it is argued now, as it was argued on this subject when Hamilton wrote his papers in the *Federalist,* that the laws of the union being the supreme law of the land, a sovereign concurrent power of a state must yield to that of the United States. "A law, by the very meaning of the term, includes supremacy. If a number of political societies enter into a larger political society, the laws which the latter may enact, pursuant to the powers intrusted to it by its constitution, must necessarily be supreme over those societies and individuals of whom they are composed. But it will not follow from this doctrine, that acts of the larger society which are not pursuant to its constitutional powers, but which are invasions of the residuary authorities of the smaller society, will become the

supreme law of the land. These will be merely acts of usurp-ation, and will deserve to be treated as such."

The idea, therefore, that because the power to borrow money is a sovereign power, and because the constitution de-clares that that constitution, and the laws of the United States, which shall be made in pursuance thereof, shall be the supreme law of the land, congress has the right, in order to enable it the more easily to borrow money, to abridge or de-stroy the power of taxation in the states, is totally untenable. The state cannot interfere with the United States in the ex-ercise of their sovereign power of taxation; the United States cannot interfere with the state in the exercise of its sovereign power of taxation. These rights have equal inherent vigor and virtue; they are equally supreme—equally inviolable. Should the exercise of any concurrent powers in the federal and state governments ever unfortunately clash, there is no constitutional tribunal which could interpose a remedy. The remedy must be left to the prudence and firmness of the peo-ple, " who, as they will hold the scales in their own hands, it· is to be hoped, will always take care to preserve the consti-tutional equilibrium between the general and the state gov-ernments."

The states, then, cannot be restricted by congress in the exercise of their sovereign right of taxation by virtue of any inherent power which necessarily resides in the federal gov-ernment, arising from the purpose and nature of its organ-ization, or from the relations essentially existing between the one and the other. The only pretext upon which congress can attempt the exercise of such an authority, must be based upon that provision of the constitution of the United States which gives it power to make all laws necessary and proper for carrying into execution the powers expressly given to it.

II. While the power to borrow money and to issue stock is undoubtedly a sovereign power, delegated to the general government, and " embraces within it all necessary power to carry it effectively into exercise," it cannot be pretended that

the term "necessary power" extends to illegal power, though it may be most plainly necessary to enable the government effectively to carry into execution the power to borrow money, or any other express power.    To grant a title of nobility, for instance, by the government of the United States, may, in certain supposed instances, be necessary to enable it to borrow money; aye, necessary in the literal sense of the term. A Rothschild or an Astor may be willing, on the condition of obtaining a dukedom, to lend the government a considerable sum out of the millions which they possess; and yet, whatever may be its necessities, and although it could not under any possibility raise a dollar from any other source, it is quite evident that it could not confer the dukedom to relieve those necessities.    We all know that the seventh clause of the ninth section of article one of the constitution of the United States expressly forbids the exercise of this power— the power to grant a title of nobility.    Is not. the general government equally incapable of interfering with any reserved power of the states to effect a similar object?    Is it not as illegal to forbid or prevent any state from selecting its subjects of taxation for the purpose of enabling it more advantageously to borrow money, as it would be to grant a title of nobility for the same purpose?    I hold, and I flatter myself that I have satisfactorily shown, that to interfere with any state in the exercise of its sovereign right of taxation, or any other sovereign right, is as directly at variance with the constitution of the United States as to grant a title of nobility. The latter is expressly prohibited in the ninth section of the first article; the former is just as clearly prohibited, though not in set words; because no such power is delegated; and "all powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively."    The sovereign power, then, of taxation in each state is as inviolable as the power to regulate the domestic relations.    And any act of the general govern-

ment having any tendency to encroach upon this right is usurpation, and therefore void.

The exercise of an abuse of power similar to this was viewed with great apprehension during the long discussion previous to the adoption, by the states, of the present constitution. It was thought by some timid persons that an indefinite power of taxation in the general government might, and probably would, in time, deprive the state governments of the means of providing for their own necessities, and would subject them entirely to the mercy of the national legislature. "As the laws of the union," it was urged, "are to become the supreme law of the land, as it is to have power to pass all laws that may be necessary for carrying into effect the authority with which it is proposed expressly to vest it, the national government might at any time abolish the taxes imposed for state objects, upon the pretense of an interference with its own. It might allege a necessity of doing this, in order to give efficacy to the national revenues; and thus all the resources of taxation might, by degrees, become the subject of federal monopoly, to the entire exclusion and destruction of the state governments." In answer to these apprehensions, it was shown that the power of taxation in the general and state governments being concurrent, any attempt of the former to monopolize the subjects of taxation would be an excess of its jurisdiction, and an infringement of that of the states; as much so as if, upon the pretense of an interference with its revenues, it should undertake to abrogate a land tax imposed by the authority of a state. It was earnestly and successfully contended by Hamilton, in language which I have already quoted, and which is worth quoting again, "That although a law laying a tax for the use of the United States would be supreme in its nature, and could not be legally opposed or controlled, yet a law abrogating or *preventing* the collection of a tax laid by the authority of a state (unless upon imports and exports) would not be the

supreme law of the land, but an usurpation of a power not granted by the constitution."

However necessary, therefore, may be the exemption of government bonds or stocks from state taxation, to enable the general government to borrow money, it is not a power which it has any right to exercise; because it has no more right to curtail than to abrogate any power reserved by the states. It would be as great an usurpation of power for congress to declare what subjects shall be exempted from taxation by a state, as directly to abrogate a tax laid by the authority of the state, under the pretense, in either case, that this action was necessary to enable the general government to borrow money, or to carry any of its enumerated powers into execution. The powers, I repeat, which it constitutionally possesses, to make all laws necessary and proper for carrying into execution the powers expressly given to it, must be confined to laws not inconsistent with the positive provisions of the constitution, and not in contravention of the powers reserved by the several states. It can no more interfere with the sovereign right of taxation, inherent in each state, than it can grant titles of nobility, for the purpose of enabling it to borrow money on the credit of the United States. If it can exempt its own bonds and stocks from taxation by the state, it can, on the same plea (that of necessity) exempt other property, until, gradually, no property shall be left for state taxation. Thus, the fears entertained by many before the adoption of the constitution, would be realized; the states would be gradually, if not speedily, denuded of their reserved powers; and they would hopelessly become mere dependencies of the national legislature. The two dire antagonistic evils, which the authors of the existing scheme of federal government sedulously endeavored to guard against, are disunion on the one hand, and consolidation on the other. Both are equally to be abhorred; both should be equally avoided, with all the vigilance and solicitude we can command. The federal constitution is alike the unimpeachable record of our na-

The People *v.* The Commissioners of Taxes.

tionality—one and indivisible—and the Great Charter of our state and our individual rights. A rigid and an uncompromising adherence to its spirit and letter is the only possible course, by which any deviation from its principles can be retraced, any wrong to the design and aspirations of its authors remedied, and any hope of preserving it, in all its integrity, fulfilled.

The assessment should be affirmed, and the writ dismissed with costs.

Order directing the respondents to correct the assessment rolls. (*a*)

[NEW YORK GENERAL TERM, October 22, 1862. *Ingraham, Barnard* and *Clerke*, Justices.]

(*a*) The following cases were argued in connection with the above, and were decided at the same time:

THE PEOPLE, *ex rel.* Peter M. Bryson et al., Trustees, &c. *vs.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK.

*By the Court*, INGRAHAM, P. J. The stock of the United States, in which the funds held by the relators were invested, were issued under the act of February, 1861, and such investments were made during that year. That such investments were liable to state taxation was decided by the court of appeals, in *The People ex rel. Bank of the Commonwealth* v. *The Commissioners of Taxes*, (23 *N. Y. Rep.* 192,) and this court is bound by that decision. Since that was made, the act of congress of April, 1862, exempting all stocks of the United States from taxation by state authority, has been passed. For the reason stated in the opinion in the case of the Hanover Bank, we do not think congress has the power to exempt from taxation stocks which had been previously issued, and had been paid for to the government, if they were subject to taxation previously. The authority to exempt from taxation by the congress of the United States can only be sustained as an incident to the power to borrow money; and if the exemption is not to enable congress to exercise that power, it becomes an interference with the right of the state as to taxation in a matter not necessary to the exercise of any power delegated to the government of the United States. For these reasons we are of opinion that judgment should be rendered for the respondents.

BARNARD and CLERKE, Justices, concurred.

The People *v.* The Commissioners of Taxes.

THE PEOPLE, *ex rel.* The Bank of Commerce, *vs.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS, &c.

*By the Court,* INGRAHAM, P. J.  We refer to the opinion delivered in the case of the Hanover Bank for our views upon the questions involving the right to exempt United States stocks from taxation, as decisive of the principal questions in this case.  An objection is taken also that the stock of corporations not liable to taxation has not been excepted in the assessment.  It appears that the respondents did deduct for this cause an amount exceeding seventy-one thousand dollars.  The papers submitted to us on the part of the relators are so imperfect that we have no means of saying whether the corporations named are liable to taxation on their capital or not, and the return of the commissioners is equally imperfect in not showing for what companies the deduction was made.  For these reasons we cannot interfere with the assessment, so far as relates to the supposed error.  If these stocks are held by corporations coming within the exception, the relators should show that fact affirmatively.